## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WILDEARTH GUARDIANS,

      Plaintiff,

vs.                                                                 No. CIV 07-1043 JB/ACT

UNITED STATES FOREST SERVICE,

      Defendant,

NEW MEXICO CATTLE GROWERS'
ASSOCIATION, COALITION OF ARIZONA/
NEW MEXICO COUNTIES FOR STABLE
ECONOMIC GROWTH, and NEW MEXICO
FEDERAL LAND COUNCIL,

      Defendant-Intervenors.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's and Federal Defendant's Joint Motion for Indicative Ruling, filed December 3, 2010 (Doc. 79)("Joint Motion"). The Court held a hearing on February 1, 2011.  The primary issue is whether the Court should issue a ruling indicating whether it would approve the Proposed Settlement Agreement between WildEarth Guardians and the United States Forest Service ("USFS") if the case were remanded.  Because the Court declines to recognize a special right on behalf of an intervenor to veto a settlement agreement in multi-party litigation and because the settlement is consistent with federal law, the Court concludes that it would approve the Proposed Settlement Agreement upon remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2009, WildEarth Guardians filed a petition in this Court alleging that the USFS unreasonably approved livestock grazing on twenty-six allotments on the Gila National Forest pursuant to Section 339 of the Consolidated Appropriations Act of 2005, P.L. No. 108-447 § 339, which requires that such grazing approvals meeting certain criteria be categorically excluded from documentation in an environmental assessment or environmental impact statement under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 to 4370. The New Mexico Cattle Growers Association, the New Mexico Federal Lands Council, and the Coalition of Arizona/New Mexico Counties for Stable Economic Growth ("NMCGA") filed a motion to intervene in the litigation in order to represent the interests of the ranchers ("permittees") holding livestock grazing permits for the challenged allotments. See Motion to Intervene on Behalf of the New Mexico Cattle Growers Association, the New Mexico Federal Lands Council, and the Coalition of Arizona/New Mexico Counties for Stable Economic Growth at 2, filed February 28, 2008 (Doc. 17). The Court granted the motion, and the NMCGA became a defendant in the underlying litigation. See Memorandum Opinion and Order at 9, filed August 29, 2008 (Doc. 44). The Court held that: (i) the USFS reasonably approved continued livestock grazing on the twenty-six challenged allotments without conducting new NEPA analyses; and (ii) the Administrative Record supported the USFS' allowance of continued livestock grazing on one or more of the twenty-six challenged allotments. See Memorandum Order and Opinion at 1-2, filed September 30, 2009 (Doc. 72). On September 30, 2009, the Court entered a final judgment in favor of the USFS on all claims. See Final Judgment at 1, filed September 30, 2010 (Doc. 73).

WildEarth Guardians filed a timely notice of appeal from the judgment on November 20, 2009.  See Notice of Appeal from Final Judgment at 1, filed November 20, 2009 (Doc. 74). WildEarth Guardians and the USFS conducted mediation with the Circuit Mediator for the United States Court of Appeals for the Tenth Circuit while the case was pending appeal, and WildEarth Guardians and the USFS reached an agreement to settle the case.  See Joint Motion ¶ 3, at 2.

On December 3, 2010, WildEarth Guardians and the USFS filed a joint motion for indicative ruling pursuant to rule 12.1 of the Federal Rules of Appellate Procedure and rule 62.1 of the Federal Rules of Civil Procedure.  See Joint Motion at 1.  Rule 62.1 provides:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: . . . state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1.  Rule 12.1 provides: "If the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal."  Fed. R. App. P. 12.1.  WildEarth Guardians and the USFS request that the Court issue an indicative ruling stating that it would enter an order approving the Proposed Settlement Agreement if the case were remanded.  See Joint Motion at 1.  WildEarth Guardians and the USFS also request that the Court retain jurisdiction to oversee compliance with the terms of the Proposed Settlement Agreement and resolve any motions to modify the terms until the USFS satisfies its obligations under the Proposed Settlement Agreement.  See Settlement Agreement ¶ 1, at 1, filed December 3, 2010 (Doc. 79-1)("Proposed Settlement Agreement").

Under the Proposed Settlement Agreement, the USFS will be required to prepare and complete new NEPA analyses in the form of environmental assessments or environmental impact

statements for five of the twenty-six challenged allotments.  See Proposed Settlement Agreement ¶ 2(B), at 2.  The USFS will also place two other allotments on the 2014-2016 Recessions Act schedule for completion of new NEPA analyses.  See Proposed Settlement Agreement ¶ 2(C), at 2.  The USFS will continue to authorize livestock grazing on all twenty-six challenged allotments under the existing NEPA scheme, including the seven allotments due for new NEPA analyses, during the pendency of the assessments and any subsequent administrative appeals.  See Proposed Settlement Agreement ¶¶ 2(A), 2(I), at 2, 4.  The USFS will also pay WildEarth Guardians $27,500.00 in attorneys' fees and costs.  See Proposed Settlement Agreement ¶ 3(A), at 4.

On January 4, 2011, the NMCGA filed its Response in Opposition to Joint Motion for Indicative Ruling.  See Doc. 84 ("NMCGA's Response").  The NMCGA requests that the Court deny the joint motion for indicative ruling and indicate its disapproval of the Proposed Settlement Agreement.  See NMCGA's Response at 21.  The NMCGA contends that the settlement was improper because the affected permittees were not given an opportunity to participate in the mediation and were not notified of the Proposed Settlement Agreement until the USFS and WildEarth Guardians filed the Joint Motion with the Court on December 3, 2010.  See NMCGA's Response at 4-5.  The NMCGA argues that the Proposed Settlement Agreement is prejudicial to the permittees' interests.  See NMCGA's Response at 7.  The NMCGA further contends that the Proposed Settlement Agreement contains provisions that award attorneys' fees to WildEarth Guardians and that such provisions violate the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)("EAJA").

On January 21, 2011, the USFS filed its Reply in Support of December 3, 2010 "Joint Motion for Indicative Ruling," Dkt. No. 79.  See Doc. 88 ("USFS' Reply").  The USFS requests that

the Court enter an order indicating that it would approve the Proposed Settlement Agreement if the Tenth Circuit were to remand the matter.  <u>See</u> USFS' Reply at 12.  The USFS contends that it was not required to submit the Proposed Settlement Agreement to the permittees or to the NMCGA for approval.  <u>See</u> USFS' Reply at 3.  The USFS further contends that the Proposed Settlement Agreement does not harm the NMCGA or the permittees, because it eliminates the risk that grazing will be enjoined or new NEPA analyses will be conducted on all twenty-six allotments if the USFS and the NMCGA suffer an unfavorable ruling on appeal.  <u>See</u> USFS' Reply at 4-6.  The USFS also asserts that the Court is not awarding fees in violation of the EAJA, and that the United States of America has the authority to settle attorneys's fees and merits together, because 28 U.S.C § 2414 authorizes the Attorney General of the United States Department of Justice to settle cases.  <u>See</u> USFS' Reply at 10; Transcript of Hearing at 59:3-5 (taken February 1, 2010)(Smith)("Tr.").[1]

On January 19, 2011, WildEarth Guardians filed its Reply in Support of Joint Motion for an Indicative Ruling.  <u>See</u> Doc. 87 ("WildEarth's Reply").  WildEarth Guardians requests that the Court grant its Joint Motion for a ruling indicating that it would approve the Proposed Settlement Agreement upon remand.  <u>See</u> WildEarth's Reply at 7.  WildEarth Guardians contends that the NMCGA had ample time to review the Proposed Settlement Agreement before the Joint Motion was filed.  <u>See</u> WildEarth's Reply at 3.  WildEarth Guardians further contends that ethical rules prohibited it from contacting individual permittees during settlement negotiations except through counsel.  <u>See</u> WildEarth's Reply at 4.  WildEarth Guardians argues that the settlement was not adverse to the permitees' interest, because it eliminated the uncertainty that the appeal presented.  <u>See</u> WildEarth's Reply at 3.  WildEarth Guardians contends that the test for determining whether

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

a court may award attorneys's fees under the EAJA does not apply to settlement agreements.  See WildEarth's Reply at 6.

The Court held a hearing on February 1, 2011.  At the hearing, the NMCGA argued that, as an intervenor, it deserved a seat at the negotiating table at all times during the settlement process.  See Tr. at 28:14-16 (Morrow).  The NMCGA conceded that the USFS could have legally agreed to conduct new NEPA analyses on some of the allotments to avoid the lawsuit, but contended that the USFS' decision to conduct new NEPA analyses earlier than scheduled was harmful to the permittees' ranching operations.  See Tr. at 33:11-16, 34:11-21 (Morrow).  The NMCGA argued that the USFS has no authority to pay WildEarth Guardians' attorneys' fees under the EAJA, which the USFS cited in the Proposed Settlement Agreement as one of its bases for paying the fees.  See Tr. at 40:3-4 (Budd-Falen).

The USFS countered that, even though it was entitled to settle WildEarth Guardians' claims without including the NMCGA in the settlement process, the NMCGA was given an adequate opportunity to review the Proposed Settlement Agreement before it was submitted to the Court.  See Tr. at 11:9-12 (Smith).  The USFS contended that it had the authority to conduct new NEPA analyses on the challenged allotments at any time and that the Proposed Settlement Agreement was therefore consistent with the Court's prior decision.  See Tr. at 13:15-18, 14:6-10 (Smith).  The USFS contended that the agreement to pay attorneys' fees only affected the NMCGA in its capacity as a taxpayer.  See Tr. at 16:11-13 (Smith).  The USFS also asserted that, even if it does not have the authority to settle attorneys' fees under the EAJA, it has the authority to do so under other statutory or common-law theories.  See Tr. at 57:2-7 (Smith).

WildEarth Guardians contended that the Proposed Settlement Agreement was favorable and reasonable, because it guaranteed new NEPA analyses on the allotments where the analyses would have the greatest environmental impact.  See Tr. at 20:10-15 (Tutchton).  WildEarth Guardians also argued that the NMCGA confused the test governing the Court's ability to award attorneys' fees after a favorable judgment with the applicable law governing the parties' ability to settle.  See Tr. at 24:12-19, 25:1-9 (Tutchton).  The Court indicated that it was inclined to grant the Joint Motion but took the matter under advisement.

## LAW REGARDING THE APPROVAL OF SETTLEMENT AGREEMENTS

A "court must approve a settlement if it is fair, reasonable and adequate."  Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir.1984).  See DV ex rel. EM v. Bd. of Regents of the N.M. Sch. for the Deaf, No. CIV 09-0420 JB/GBW, 2010 WL 2486002 (D.N.M. April 29, 2010)(Browning, J.)(approving a settlement where it was "fair and reasonable, and in [the plaintiff's] best interests").  Voluntary agreements are favored as a matter of public policy.  See Trujillo v. State of Colo., 649 F.2d 823, 826 (10th Cir. 1981).  When an administrative agency has entered into a settlement agreement, a court should exercise deference to the agency's decision and refrain from second-guessing the Executive Branch.  See Sam Fox Pub. Co. v. United States, 366 U.S. 683, 689 (1961)("Sound policy would strongly lead us to decline . . . to assess the wisdom of the Government's judgment in negotiating and accepting the . . . Consent Decree, at least in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting").  "[T]o the extent that the consent decree is not otherwise shown to be unlawful, the court is not barred from entering a consent decree merely because it might lack authority under [the governing statute] to do so after a trial."  Local No. 93, Int'l Ass'n of Firefighters v. Cleveland, 478 U.S. 501, 526 (1986).

## ANALYSIS

The NMCGA requests that the Court deny the Joint Motion and indicate its disapproval of the Proposed Settlement Agreement. The NMCGA contends that the USFS and WildEarth Guardians should have consulted with the NMCGA and the individual permittees before negotiating the settlement, and that the Proposed Settlement Agreement awards attorneys' fees in violation of the EAJA. The USFS and WildEarth Guardians respond that the NMCGA was not required to approve the Proposed Settlement Agreement and that the USFS has the authority to settle the fees along with the merits without triggering an analysis under the EAJA. The Court has carefully reviewed the Proposed Settlement Agreement as well as the applicable authority governing a federal defendant's ability to settle claims to avoid litigation. The Court agrees that the NMCGA was not required to approve the Proposed Settlement Agreement and that the provision for the payment of attorneys' fees does not violate the EAJA. The Court concludes that the Proposed Settlement Agreement is fair, reasonable, and in the USFS' and WildEarth Guardians' best interests. If the case were remanded, the Court would approve the Proposed Settlement Agreement.

## I.   THERE IS NO REQUIREMENT THAT THE PERMITTEES OR THE NMCGA APPROVE THE PROPOSED SETTLEMENT AGREEMENT.

The NMCGA argues that the USFS and WildEarth Guardians did not consult with the permittees who held grazing permits for the effected allotments before entering into the Proposed Settlement Agreement. See NMCGA's Response at 4. The NMCGA contends that the grazing permittees it represents have significant interests that the Proposed Settlement Agreement could adversely impact, and that the Proposed Settlement Agreement is greatly prejudicial to those interests. See NMCGA's Response at 4. The NMCGA asserts that the permittees will suffer harm if the Court approves the Proposed Settlement Agreement, because it creates uncertainties whether

their permits will be renewed, and whether grazing will be enjoined during the analysis and any subsequent appeals. See NMCGA's Response at 6. The NMCGA contends that these uncertainties will have a negative impact on the permittees' future business interests, because the value of the permittees' land is dependant upon whether they hold a grazing permit. See NMCGA's Response at 6.

The USFS and WildEarth Guardians respond that neither party was required to confer with the permittees before submitting the Proposed Settlement Agreement to the Court. See USFS' Reply at 3. The USFS and WildEarth Guardians argue that the permits for the challenged allotments are already in jeopardy by virtue of WildEarth Guardians' appeal. See USFS' Reply at 5. The USFS and WildEarth Guardians further contend that the Proposed Settlement Agreement serves to minimize uncertainty, because it eliminates the risk that the Tenth Circuit will enjoin livestock grazing and subject all twenty-six allotments to new NEPA analyses following an adverse decision on appeal. See USFS' Reply at 6. The USFS and WildEarth Guardians also argue that the Proposed Settlement Agreement does not change the permits' terms or conditions for the challenged allotments, because the USFS already has the discretion to modify the terms or conditions of existing permits as necessary to protect natural resources. See USFS' Reply at 7-8.

The Court agrees that the USFS and WildEarth Guardian are free to negotiate a settlement agreement without consulting with the individual permittees whom the NMCGA represents. "[A]n intervenor has no power to veto a settlement by other parties." San Juan County, Utah v. United States, 503 F.3d 1163, 1189 (10th Cir. 2007). "Allowing [a party] to intervene does not mean that it can veto the settlement . . . . The district court can still approve the consent decree if it finds that

the settlement is reasonable, fair and consistent with [federal law]." <u>United States v. Albert Inv. Co.</u>, 585 F.3d 1386, 1398 (10th Cir. 2009)(internal citations omitted).

The Supreme Court of the United States' decision in <u>Local No. 93, International Association of Firefighters v. City of Cleveland</u> also informs the Court's analysis on this issue.  There, as here, the intervenor-union objected to a settlement that the plaintiffs and the defendant-city had negotiated.  <u>See</u> 478 U.S. at 528-29.  The Supreme Court held that the district court was not barred from approving the settlement over the intervenor's objections provided that the settlement did not impose any legal obligations or duties on the intervenor.  <u>See</u> 478 U.S. at 529-30.  The Supreme Court noted that "[i]t has never been supposed that one party -- whether an original party, a party that was joined later, or an intervenor -- could preclude other parties from settling their own disputes and thereby withdrawing from litigation."  478 U.S. at 529.  "[T]hus, while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent."  478 U.S. at 529.  The Supreme Court's decision in <u>Local No. 93, International Association of Firefighters v. City of Cleveland</u> is not without limits, however.  A nonconsenting intervenor may object to the approval of a settlement agreement "if the decree adversely affects its legal rights or interests." <u>Johnson v. Lodge # 93 of the Fraternal Order of Police</u>, 393 F.3d 1096, 1107 (10th Cir. 2004)(citing <u>United States v. City of Hialeah</u>, 140 F.3d 968, 975 (11th Cir. 1998)).

The NMCGA has not demonstrated that the Proposed Settlement Agreement imposes any legal obligations on it or adversely affects its legal rights any more than the USFS can always do. The NMCGA contends that the Agreement adversely affects the permittees' interest in maintaining a secure livestock grazing permit for the challenged allotments.  <u>See</u> NMCGA's Response at 6.

-10-

Because the USFS has the discretion to modify permits as necessary to protect natural resources, the NMCGA cannot assert a legally cognizable interest in maintaining the current terms and conditions of the permits.  See 43 U.S.C. § 1752(a) (recognizing that the USFS has the authority "to cancel, suspend, or modify a grazing permit or lease, in whole or in part, pursuant to the terms and conditions thereof"); 36 C.F.R. § 222.4(a) (stating that the USFS "is authorized to cancel, modify, or suspend grazing and livestock use permits in whole or in part," to "[m]odify the terms and conditions of a permit to conform to the current situations brought about by changes in law, regulation, executive order, development or revision of an allotment management plan, or other management needs," and to "[m]odify the seasons of use, numbers, kind, and class of livestock allowed or the allotment to be used under the permit, because of resource condition"); 63C AM. JUR. 2D Public Lands § 95 (2010)(noting that "the use of public lands for stock grazing, either under the original regime of tacit consent or under the permit system, is seen as a privilege that is revocable at any time, and the modification of a grazing permit is generally a matter of agency discretion").

Permittees do not have a property interest in the terms and conditions of grazing permits. See Federal Lands Legal Consortium v. United States, 195 F.3d 1190, 1201 (10th Cir. 1999)("Because Congress expressly allowed the Forest Service to alter the terms and conditions of the permits after the completion of the NEPA analysis, [grazing permittees] cannot successfully premise a legitimate claim of entitlement to the terms and conditions of the permits as issued."); 36 C.F.R. § 222.3(b) ("Grazing permits and livestock use permits convey no right, title, or interest held by the United States in any lands or resources.").  Moreover, the Court notes that, although the Proposed Settlement Agreement calls for new NEPA analyses for the challenged allotments, it does

not change the terms or conditions of the permits for the challenged allotments.  See USFS' Reply at 5; Proposed Settlement Agreement ¶ 2(I) at 4.

The NMCGA also objects to the Proposed Settlement Agreement, because it requires the USFS to conduct new NEPA analyses on the challenged allotments earlier than scheduled.  See Tr. at 34:8-13 (Morrow).  The USFS is entitled to perform new NEPA analyses at any time, and there is no legal authority to the contrary.  The USFS and WildEarth Guardians are not asking the Court to vacate its decision in WildEarth Guardians v. United States Forest Service, 668 F. Supp. 2d 1314 (D.N.M. 2009)(Browning, J.), and the Court believes the opinion is consistent with the USFS' decision to conduct the analyses earlier than scheduled.  There, the Court denied WildEarth Guardians' petition to review the USFS' decision to authorize grazing on the twenty-six challenged allotments without conducting new NEPA analyses.  See 668 F. Supp. 2d at 1333. Although the Court determined that the USFS was not *required* to conduct new NEPA analyses, nothing in the Court's decision prevents the USFS from exercising its discretion to conduct new NEPA analyses for five of the twenty-six challenged allotments to reach a favorable settlement pending appeal.

The Court gave the NMCGA an opportunity to present evidence and have its objections heard at a hearing that the Court held on February 1, 2011.  After careful consideration of the applicable authorities, the Court is not inclined to recognize a special right on intervenors' behalf to participate in and/or approve all settlements negotiated during the pendency of the litigation.  See San Juan County, Utah v. United States, 503 F.3d at 1189 (holding that an "intervenor has no power to veto a settlement by other parties").  While the Court recognizes that a certain amount of unfairness may result when a party is excluded from a settlement in multi-party litigation, it is not the place of the Court to start policing the settlement process.  The Court finds that the NMCGA was

-12-

not required to approve the Proposed Settlement Agreement and that the Proposed Settlement Agreement does not exceed the USFS' authority to conduct new NEPA analyses.

## II.   **THE PROVISION OF ATTORNEYS FEES IS PROPER.**

The Court believes that the NMCGA lacks standing to challenge the attorneys' fees provision, because it has not demonstrated an injury beyond the alleged "illegal" use of tax dollars to pays the fees.   Intervenors are generally not required to establish standing sufficient to meet the standards of Article III of the United States Constitution if the intervenor piggybacks upon the standing of an existing party to a case.   See San Juan County, Utah v. United States, 503 F.3d at 1172 (holding "that parties seeking to intervene under rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case"  (internal quotation marks omitted)).   If  the original parties to the case settle all the claims between them and the intervenor wishes to challenge the settlement, however, the intervenor is then required to establish independent standing under Article III of the United States Constitution.   See City of Colo. Springs v. Climax Molybdenum Co., 587 F.3d 1071, 1081 (10th Cir. 2009)("Intervenors must show independent standing to continue a suit if the original parties on whose behalf intervention was sought settle or otherwise do not remain adverse parties in the litigation.")(quoting Dillard v. Chilton County Com'n, 495 F.3d 1324, 1330, 1336 (11th Cir. 2007)(internal quotation marks omitted)).

Article III of the United States Constitution limits the federal courts' jurisdiction to actual cases or controversies.   See Allen v. Wright, 468 U.S. 737, 750 (1984).   For the NMCGA to have standing to challenge the attorneys' fees provision, it must demonstrate three things:

(1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2)

a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court"; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative."

In re Integra Realty Res., Inc., 262 F.3d 1089, 1101 (10th Cir. 2001)(quoting Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville, 508 U.S. 656, 663-64 (1993)(internal quotation marks omitted)).

The NMCGA contends that the provision for attorneys' fees is an "egregious and illegal use of tax dollars." NMCGA's Response at 7. It is well established that a taxpayer does not have standing to challenge state and federal spending decisions. Colo. Taxpayers Union, Inc. v. Romer, 963 F.2d 1394, 1399 (10th Cir. 1992)(citing Flast v. Cohen, 392 U.S. 83 (1968)). A narrow exception to the general prohibition of taxpayer standing "applies . . . to cases in which a federal taxpayer challenges a congressional appropriation made pursuant to Article I, Section 8 that allegedly violates the Establishment Clause of the First Amendment." Raiser v. United States, 325 F.3d 1182, 1183-1184 (10th Cir. 2002)(internal quotations omitted). The present case does not fall within the exception.

The Court believes that the NMCGA lacks standing to challenge the attorneys' fees provision, because it has not demonstrated that it suffered any injury in fact beyond the USFS' allegedly "illegal" use of tax dollars to settle the fees along with the merits. See Diamond v. Charles, 476 U.S. 54, 70-71 (1986)(holding an intervenor in the underlying district court case lacked Article III standing to pursue an appeal where the only remaining controversy in the suit was a dispute over the award of attorneys' fees because the fee award was "wholly unrelated to the subject matter of the litigation"); Kola Nut Travel, Inc. v. United States, 72 Fed. Cl. 183, 184-85

(2006)(holding that an intervenor lacked standing to challenge a settlement agreement between the plaintiff and the United States on the grounds that one of the plaintiff's claims was fraudulent, because the intervenors were not parties to the settlement and suffered no personal harm from it, notwithstanding the potential that its tax dollars went to pay the allegedly fraudulent claim).

While NMCGA does not have standing to challenge the provision of Attorneys' fees in the Proposed Settlement Agreement, because the parties request that the Court give an indicative ruling on whether it would approve the Proposed Settlement Agreement, the Court has an obligation to review the legitimacy of the Proposed Settlement Agreement and to ensure that it consistent with federal law. The Court will therefore address whether the attorneys' fees provision violates the EAJA. The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S. C. 2412 (d)(1)(a). The NMCGA argues that the Court cannot approve the Proposed Settlement Agreement unless it first finds that WildEarth Guardians is a prevailing party, that the position of the United States is not substantially justified, and that no special circumstances exist, in accordance with the EAJA. See NMCGA's Response at 8, 15, 20.

The USFS and WildEarth Guardians respond that the EAJA is not applicable to the Proposed Settlement Agreement, because it governs the Court's ability to award attorneys' fees after the conclusion of a lawsuit rather than private agreements among the parties to settle fees. See WildEarth's Reply at 6; USFS' Reply at 10. The USFS contends that it has the authority to settle attorneys' fees under 28 U.S.C. § 2414. See USFS's Reply at 10; Tr. at 59:3-5 (Smith).

The Court finds that the EAJA does not apply to the attorneys' fees provision in the Proposed Settlement Agreement.  It is important not to confuse the analysis whether a settlement is fair, reasonable, and in the parties' best interests for the purposes of deciding whether to approve it, with the analysis whether, and to what extent, the Court may award attorneys' fees to the prevailing party after the case has settled.  While the EAJA governs the latter, see, e.g., Wyo. Wildlife Found. v. United States, 792 F.2d 981 (10th Cir. 1986)(affirming the district court's award of fees where the plaintiff filed a separate fee application pursuant to the EAJA after the parties reached a settlement), nothing in the language of the statute or its legislative history[2] limits the parties' ability to *negotiate* an agreement that settles the fees and the merits together.

Based on the EAJA's plain language, the Court believes that it pertains to fees awarded by a court after a final judgment or order of settlement is entered rather than fees negotiated as part of a settlement agreement.  See 28 U.S.C. § 2412(d)(1)(A), (2)(G)(stating that "a court shall *award* to a prevailing party other than the United States fees and other expenses" (emphasis added)).  The Court notes that the statute sets forth the necessary procedure for obtaining a fee award pursuant to

---

[2]     The legislative history pertaining to eminent domain proceedings also sheds light on Congress' intent regarding whether the EAJA applies to settlement provisions providing for attorneys' fees:

> This amendment applies only to values testified to in court. It would have no application to settlement negotiations or agreements. In fact, the amendment expressly denies the status of prevailing party to any party who obtains a judgment by settlement. Thus, it is presumed that any claim for expenses and fees under the act which a party might have asserted in the event of trial would be considered by the parties in their negotiations and that an appropriate allowance, if any, would be made in the settlement amount agreed upon, so that a final judgment achieved through settlement shall foreclose thereafter the assertion of any such claim.

H.R.Rep. No. 99-120, pt. I, at *18-19 (1985), as reprinted in 1985 U.S.C.C.A.N. 132, 147.

the EAJA, and the procedure begins after a Settlement Agreement is completed -- not as part of the Settlement Agreement.  See 28 U.S.C. § 2412(d)(1)(B) (instructing that "[a] party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection").

Because the Court is merely blessing the Proposed Settlement Agreement and is not awarding fees, the Court need not address the merits whether WildEarth Guardians would be entitled to assert a claim for attorneys' fees under the EAJA.  As the United States Court of Appeals for the D.C. Circuit stated in Citizens for a Better Environment v. Gorsuch, 718 F.2d 1117, 1125-26 (D.C. Cir. 1983):

> The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties.

718 F.2d 1117, 1125-26 (quoting Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights, 616 F.2d 1006, 1014 (7th Cir. 1980)); United States v. City of Miami, Fla., 664 F.2d 435, 441 (5th Cir. 1981)(en banc)(same).  Accord Franks v. Kroger Co., 649 F.2d 1216, 1224 (6th Cir. 1981); Patterson v. Newspaper & Mail Deliverers' Union of New York, 514 F.2d 767, 771-72 (2d Cir.1975), cert. denied, 427 U.S. 911 (1976).

Northeast Iowa Citizens for Clean Water v. AgriProcessors, Inc., 469 F. Supp. 2d 666 (D. Iowa 2006), which is factually similar to the present case, illustrates this point.  There, an environmental group who consolidated its lawsuit to join the Environmental Protection Agency's litigation objected to the settlement agreement negotiated between the EPA and the defendant to settle claims stemming from the defendant's violations of various environmental laws.  See 469 F.

-17-

Supp. 2d at 671-73.  The environmental group complained that the settlement excluded it from the negotiating table and included a provision imposing civil penalties that did not conform to 33 U.S.C. § 1319(d), the statute governing civil penalties for violations of environmental laws.  See 469 F. Supp. 2d at 673-674.  In approving the settlement, the court there noted that, because it is not required to evaluate a consent decree as if it were a trial on the merits, it was not required to apply the standards governing the calculation of civil penalties set forth in 33 U.S.C. § 1319(d).  See 469 F. Supp. 2d at 676.

The Court finds that the USFS has the authority to settle claims for attorneys' fees along with the merits to resolve the entire dispute and to eliminate the risk associated with litigation.  See Nilsen v. York County, 400 F.Supp. 2d 266, 272 (D. Me. 2005)("It is well established that a defendant may settle, for a single lump sum, all outstanding claims in a fee-shifting case, including claims for attorney fees."  (citing Evans v. Jeff D., 475 U.S. 717, 731-33 (1986)).  The Supreme Court in Evans v. Jeff D "recognized that a rule prohibiting the comprehensive negotiation of all outstanding issues in a pending case might well preclude the settlement of a substantial number of cases." 475 U.S. at 733.  The Supreme Court went on to reason that, "[i]f defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, . . . many a defendant would be unwilling to make a binding settlement offer on terms that left it exposed to liability for attorney's fees in whatever amount the court might fix on motion of the plaintiff." 475 U.S. at 733.

The USFS also has the authority to pay the attorneys' fees under 28 U.S.C. § 2414, which authorizes the Attorney General to pay judgments against the United States and compromise settlements that a district court approves.  Section 2414 of Title 28 provides:

> Except as otherwise provided by law, compromise settlements of claims referred to the Attorney General for defense of imminent litigation or suits against the United

-18-

States, or against its agencies or officials upon obligations or liabilities of the United States, made by the Attorney General or any person authorized by him, shall be settled and paid in a manner similar to judgments in like causes and appropriations or funds available for the payment of such judgments are hereby made available for the payment of such compromise settlements.

28 U.S.C. § 2414.  The Court finds that the USFS is entitled to pay WildEarth Guardians the attorneys' fees negotiated as part of the Proposed Settlement Agreement pursuant to 28 U.S.C. § 2414.

The Court has carefully reviewed the attorneys' fees provision of the Proposed Settlement Agreement.  The Court concludes that the USFS has the authority to settle any claims for attorneys' fees along with the merits of the case to achieve a favorable settlement and to dispose of the litigation.  The USFS has made a reasonable decision to compromise WildEarth Guardians' potential claims in the interest of reducing the costs of litigation.  The Court finds that the Proposed Settlement Agreement is consistent with federal law as well as the strong public policy favoring voluntary settlements, and as such the Court will not second-guess the USFS' judgment.  The Court believes that the USFS' decision to conduct new NEPA analyses on five essential allotments, and to pay a relatively small amount of attorneys' fees in exchange for the dismissal of WildEarth Guardians' claims, is appropriate and reasonable, and that approval of the Final Settlement will be in the USFS' and WildEarth Guardians' best interests.  The Court indicates that it would approve the Proposed Settlement Agreement if the case were remanded.

**IT IS ORDERED** that the Plaintiff's and Federal Defendant's Joint Motion is granted, and the Court indicates that it would approve the Proposed Settlement Agreement if the Court is given leave by the Tenth Circuit to do so.

_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

James Tutchton
WildEarth Guardians
Denver, Colorado

   *Attorneys for the Plaintiff*

Andrew A. Smith
  Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
Albuquerque, New Mexico

   *Attorneys for the Defendant*

Karen Budd-Falen
Kathryn Brack Morrow
Brandon L. Jensen
Budd-Falen Law Offices, LLC
Cheyenne, Wyoming

   *Attorneys for the Defendant-Intervenors*